### Walker Berry v. Illinois Central Railroad Co.

1.  INSTRUCTIONS—*Erroneous, Will Not Always Reverse.*—Where substantial justice has been done and the court can see that any other result would be unjust to the successful party, it is the duty of this court to affirm the judgment, notwithstanding erroneous instructions were given.

**Trespass on the Case,** for personal injuries.    Appeal from the Circuit Court of McLean County; the Hon. COLOSTIN D. MYERS, Judge, presiding.    Heard in this court at the May term, 1900.    Affirmed. Opinion filed December 7, 1900.

A. J. BARR, and JOHN E. & MAYNE POLLOCK, attorneys for plaintiff in error.

CHARLES L. CAPEN, attorney for defendant in error; JOHN G. DRENNAN, of counsel.

MR. PRESIDING JUSTICE HARKER delivered the opinion of the court.

This suit was brought by the plaintiff in error to recover for injuries sustained by him in being ejected from a train of defendant in a violent and wrongful manner, as alleged by him.

A trial by jury resulted in a verdict and judgment for the defendant. A reversal is sought because of erroneous instructions given for the defendant.

Instructions numbered four and seven, given for the defendant, are, in our opinion, erroneous. For the error in giving them, the judgment should be reversed unless we can say from the whole record that substantial justice has been done.

The facts disclosed by the evidence in the record are as follows:

About seven o'clock on the evening of November 19, 1897, the plaintiff and his cousin, Newton Dodson, got upon the front platform of the baggage car of defendant's train, running from Kankakee to Bloomington, at Anchor, a station twenty-six miles from Bloomington. They were there discovered by the baggageman, who notified the conductor. They told the conductor that they were going to Colfax, a station four miles west of Anchor, and fare was collected from them to that point. They left the train on reaching Colfax, but when it started again they got upon the platform and there remained without the knowledge of the trainmen until the conductor opened the door of the baggage car at the junction of the Kankakee branch with the main line, near Bloomington. The train was in motion. At that time, Dodson was on the lowest step of the platform and the plaintiff was on the step immediately above him, their faces toward the engine. As to what the conductor then did there is a sharp conflict in the evidence. The plaintiff testified that the conductor said, " Get off of here," and kicked him, with his foot, down upon Dodson. Dodson testified that the conductor said, " Get off," and that the plaintiff came down upon him with such force as to knock him off the train. The conductor denied that he pushed the plaintiff with his foot, or told him to get off, and testified that all that he saw of any one when he opened the door was a hand and arm resting upon the tender of the engine, and they at once disappeared. Whether the plaintiff voluntarily jumped off, was pushed off, or fell off,

it is certain that he was badly injured and was picked up in an unconscious condition.

A careful analysis of the evidence on this branch of the case satisfies us that the conductor neither pushed nor kicked the plaintiff. He is strongly corroborated by the baggageman, who testified that when the conductor opened the door, he was immediately in his rear, going, as was his duty, to turn a switch; that he was in a position to see whether the conductor kicked any one or raised his foot against any one, and that he did not.

Dodson was not in a position to see whether the conductor kicked or pushed Berry, and does not, in his testimony, pretend that he saw such a thing. We have no doubt that he used the language imputed to him, immediately after the accident, in reply to an inquiry as to why they had done as they had, that they "jumped off the car" and "thought they could jump without getting hurt."

The two men were stealing a ride. According to their own testimony, when the door opened, they were standing upon the lower steps of the platform, facing the engine, in a natural position to alight from the car. The train was "slowing up," and their intention was to get off at this junction and go in another direction to their home at Lexington. Conscious that they were violating the law and wishing to avoid detection, it was a natural impulse for them, when the light of the conductor's lantern flashed upon them, to jump from the car and get out of sight.

When told by his surgeon, two days after the accident, that the chances were against his recovery, and in reply to an inquiry as to how the accident occurred, Berry did not even intimate that he was kicked or pushed off the car.

We feel that substantial justice has been done by the verdict and judgment below, and that any other conclusion would be unjust to the defendant. It is our duty, therefore, to affirm the judgment notwithstanding the erroneous instructions mentioned. Heckle v. Grewe, 125 Ill. 58; Keeler v. Herr, 157 Ill. 57; Johnson v. I. C. R. R. Co., 61 Ill. App. 522; McQuaid v. C., R. I. & P. Ry. Co., 78 Ill. App. 673. Judgment affirmed.